1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8

9   GEMMEL DIXON,                          CASE NO. 1:09-cv-00172-OWW DLB PC

10                         Plaintiff,        ORDER STRIKING DUPLICATIVE FIRST
                                            AMENDED COMPLAINT FROM COURT
11          v.                              RECORD

12   F. GONZALES, et al.,                   (Doc. 14)

13                                          FINDINGS AND RECOMMENDATIONS
                                            FOLLOWING SCREENING OF FIRST
14                        Defendants.        AMENDED COMPLAINT

15                                          (Doc. 13)

16                                          OBJECTIONS, IF ANY, DUE IN THIRTY (30)
                                            DAYS
17

18   _____/

19              **Order Striking Duplicative Amended Complaint**

20          On June 2, 2009, the Court received two copies of Plaintiff's amended complaint. (Docs. 13,

21   14.) Both are dated May 22, 2009 and both have been filed into the Court Record as Plaintiff's First

22   Amended Complaint.

23          Docket Entry #13 is longer and contains an additional document entitled "Supplemental

24   Claim." It appears to be the most complete of the two documents and is therefore treated as the

25   operative pleading.

26          To avoid confusion, the amended complaint appearing as Docket Entry #14 is HEREBY

27   ORDERED STRICKEN.

28   ///

1

**Findings and Recommendations Following Screening of First Amended Complaint**

**I.    Screening Requirement**

Plaintiff Gemmel Dixon ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 28, 2009.  The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusion are not. Id. at 1949.  By order issued May 8, 2009, Plaintiff's complaint was dismissed, with leave to amend, for failure to state a claim upon which relief may be granted.  Now pending before the Court is Plaintiff's First Amended Complaint ("FAC"), filed June 2, 2009.  (Doc. 13.)

**II.    Summary of Plaintiff's First Amended Complaint**

Plaintiff, who is housed at California Correctional Institution ("C.C.I.") in Tehachapi, brings this action for violation of the First, Eighth and Fourteenth Amendments of the United States Constitution. Plaintiff names Warden F. Gonzales, Associate Warden M. Carrasco, Facility Captain D. Zanchi, Facility Lieutenant J. Paterson, Correctional Lieutenant Gentry, Director of Corrections S. Hubbard, Chief of Classification Services E. Arnold, Correctional Counselor S. Albritton, and

1 | Correctional Counselor M. Genova as defendants.  Plaintiff seeks money damages and equitable

2 | relief.

3 | Plaintiff is incarcerated at IV-A- SHU at C.C.I.  Plaintiff was previously housed at IV-B

4 | Facility General Population ("G.P.").  On June 25, 2007, a racial riot erupted between black and

5 | Mexican inmates.  Plaintiff was attacked by two Mexican inmates and forced to defend himself.

6 | Plaintiff was charged with a disciplinary infraction for participation in a riot and found guilty.  On

7 | August 3, 2007, Plaintiff was assessed a four month security housing unit ("SHU") term.  Plaintiff

8 | completed this term on September 25, 2007. Plaintiff was approved for IV-A facility G.P. placement

9 | on October 24, 2007.  On November 17, 2007, C.C.I. prison officials were notified of an imminent

10 | attack on Plaintiff's well-being if Plaintiff was released into G.P.  On November 20, 2007, Plaintiff

11 | was involved in a physical altercation and assaulted by two black gang members.  Plaintiff was

12 | placed into administrative segregation ("Ad Seg") pending an Institutional Classification Committee

13 | (" I.C.C.") review.  On November 29, 2007, Plaintiff appeared before the I.C.C. and was retained

14 | in Ad Seg pending completion of the incident investigation.  On December 27, 2007, Plaintiff

15 | reappeared before the I.C.C.  The Institution Gang Investigator ("IGI") Unit recommended that

16 | Plaintiff be transferred to another institution.  The classification members sought sensitive needs yard

17 | ("S.N.Y.") placement.  Plaintiff refused, and his case was referred to the Departmental Review Board

18 | ("D.R.B.").  On January 17, 2008, Plaintiff was officially referred to D.R.B. for indeterminate SHU

19 | term placement.  On June 27, 2008, the D.R.B. rejected the I.C.C.'s recommendation for imposing

20 | an indeterminate SHU term for safety concerns, but approved an indeterminate SHU term based on

21 | Plaintiff's disciplinary history.  On August 5, 2008, Plaintiff was placed in C.C.I.'s IV-A-SHU.

22 | **A.   Failure to Protect**

23 | The Eighth Amendment protects prisoners from inhumane methods of punishment and from

24 | inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).

25 | Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with

26 | food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer v. Brennan, 511 U.S.

27 | 825, 832-33 (1994) (internal citations and quotations omitted).  Prison officials have a duty to take

28 | reasonable steps to protect inmates from physical abuse.  Id. at 833; Hearns v. Terhune, 413 F.3d

1036, 1040 (9th Cir. 2005).  The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff.  E.g., Farmer at 847; Hearns at 1040.

Plaintiff alleges that Defendants Gonzales, Carrasco, Zanchi, Peterson and Gentry failed to take any preventive measures upon receiving confidential information about a threat directed at Plaintiff and that he was subsequently attacked.  (Doc. 13, FAC, Court Docket p.19.) Based on the minimal federal notice pleading standard, Plaintiff states a cognizable claim for failure to protect in violation of the Eighth Amendment.

However, Plaintiff's argument that the Defendants' deliberate indifference to a risk of harm to Plaintiff is also violative of the First Amendment and also the Equal Protection Clause of the Fourteenth Amendment is not cognizable. "Section 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998).  Plaintiff has not sufficiently alleged that any defendant acted with an intent or purpose to discriminate against Plaintiff based upon membership in a protected class, Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  In fact, there are no facts alleged whatsoever to suggest any violation of the Equal Protection Clause.  Plaintiff fails to state a viable claim.

In addition, it is unclear how Defendants' purported failure to protect him from harm implicates the First Amendment. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), cert. denied, 117 S. Ct. 1845 (1997); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).  Here, the Eighth Amendment governs Plaintiff's claim alleging a failure to protect.

**B.    Retaliation**

Next, Plaintiff contends that I.C.C. members Carrasco, Zanchi, and Genova retaliated against Plaintiff for his refusal to disclose his enemy concerns amongst black gang members, or to disclose the reason for the assault on him at the December 27, 2007 I.C.C. hearing.  Plaintiff states that he

4

was unaware of any threat to him, that defendants ignored his declaration that he knew nothing of the planned attack, and that defendants proceeded with a recommendation of an indeterminate SHU term in retaliation for Plaintiff's perceived refusal to cooperate.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Here, Plaintiff indicates that he was unaware of any enemy or safety concerns, or conflicts with other gangs or persons, and informed the I.C.C. that he had no knowledge of any planned attack upon him. (Doc. 13, FAC, Court Docket pp. 6-7.) The fact that Defendants recommended that Plaintiff be placed in SHU for safety concerns because they did not believe him is not violative of the First Amendment.[1] There are no facts alleged indicating that Plaintiff was engaged in any protected conduct. Because there is no violation, Plaintiff's attempt to impose liability on defendant Gonzales for failing to intervene necessarily fails. Furthermore, conclusory statements are insufficient to state a claim. Iqbal, 129 S.Ct. at 1949.

**C.    Due Process**

Next, Plaintiff alleges that the imposition of an indeterminate SHU term based on his disciplinary history violates due process. Plaintiff contends that he was not provided with notice or a hearing to present a defense to the imposition of the SHU placement. Plaintiff further argues that

---

[1] To the extent that Plaintiff is attempting to state a claim for retaliation based upon a right to not speak (i.e., not to "snitch"), that claim also fails. Protected conduct as contemplated by the First Amendment in the prison context has included filing of prison grievances, Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003), giving legal assistance to other inmates, Rizzo, 778 F.2d at 531, and access to the courts, Lewis v. Casey, 518 U.S. 343, 346 (1996). Choosing not to disclose information about possible safety and security concerns is not protected conduct. Furthermore, Plaintiff cannot then assert that defendants lacked a legitimate penological purpose in recommending that he be placed in SHU for safety reasons.

5

1   the consideration given to his previous disciplinary history was inappropriate.

2        The Due Process Clause protects against the deprivation of liberty without due process of

3   law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the

4   protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest

5   for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself

6   or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest

7   in avoiding "more adverse conditions of confinement." Id. Under state law, the existence of a

8   liberty interest created by prison regulations is determined by focusing on the nature of the

9   deprivation. Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Liberty interests

10  created by state law are "generally limited to freedom from restraint which . . . imposes atypical and

11  significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484;

12  Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

13       The Court presumes, at the pleadings stage, that a liberty interest arises from the imposition

14  of an indeterminate SHU term. Nevertheless, Plaintiff still fails to state a cognizable claim for denial

15  of due process. Plaintiff attended an I.C.C. hearing on December 27, 2007, held for the purpose of

16  conducting a program review. Placement in S.N.Y. was discussed and refused by Plaintiff. Plaintiff

17  was then informed that a recommendation would be made to the D.R.B. that an indeterminate SHU

18  term be imposed. Plaintiff was afforded aan opportunity to be heard and to contest his placement in

19  SHU at the hearing. The fact that the D.R.B. imposed an indeterminate SHU term based on

20  Plaintiff's past disciplinary history, and not based on safety concerns, does not violate due process.

21  **III.   Conclusion and Recommendation**

22       Plaintiff's First Amended Complaint states a claim against Defendants Gonzales, Carrasco,

23  Zanchi, Peterson and Gentry for failure to protect Plaintiff from a serious risk of harm, in violation

24  of the Eighth Amendment. However, for the reasons set forth herein, the First Amended Complaint

25  does not state any other viable claims. Plaintiff was previously informed of the deficiencies with his

26  other claims and still has been unable to cure them. Therefore, the Court does not recommend that

27  further leave to amend be granted. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

28  ///

Accordingly, the Court HEREBY RECOMMENDS as follows:

1.     This action proceed on Plaintiff's First Amended Complaint, filed June 2, 2009, against Defendants Gonzales, Carrasco, Zanchi, Peterson and Gentry for failure to protect, in violation of the Eighth Amendment;

2.     Plaintiff's First and Fourteenth Amendment claims be dismissed for Plaintiff's failure to state a claim; and

3.     Defendants Hubbard, Arnold, Albritton, and Genova be dismissed from this action for Plaintiff's failure to state any claims upon which relief may be granted against them.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


     IT IS SO ORDERED.

**Dated:      October 20, 2009                        /s/ Dennis L. Beck        **
                                                        UNITED STATES MAGISTRATE JUDGE